The opinion of the Court was delivered by
DüNKIN, 0. J.
The presiding Judge reports that this was an appeal from the decree of the Ordinary of Edgefield District, admitting to probate the last will and testament of Hugh Moseley, deceased, dated 26th October, 1863.
The following issues were suggested: First, That the will was not legally executed. Second, That undue influence was exercised. Third, That the testator was of unsound mind. Fourth, That the testator was under mental delusion when the will was executed.
The jury rendered a general verdict in favor of the will. Erom this verdict the plaintiffs, who are the widow and *337 only child of tbe testator, have appealed on several grounds. At tbe period of the execution of the will the testator was between seventy and eighty years of age. The instrument is not before the Court. But it was admitted that no part of the considerable estate of the testator was given to either of tbe appellants, but that the whole was disposed of to collateral connections.
In the view taken by the Court, it is not necessary to recapitulate the testimony or to comment particularly upon all the grounds of appeal. The report of the Judge states his charge upon ihe several points in which exception is taken.
In reference to the several grounds of appeal, except the second, third, and eighth or last ground, the Court thinks the charge of his Honor obnoxious to no just objection, and deem it well vindicated by the reasons stated in the report.
The second ground presents more difficulty, and depends, in a great measure, upon the construction of the Act of Assembly passed in September, 1866, (13 Stat. 377,) and entitled “An Act to make parties, plaintiffs and defendants, in all cases, competent to give testimony in such cases, in like manner as other witnesses.” By the first section it is declared that “on the trial of any issue joined, &c., the parties thereto, &c., and all persons interested in the same, except as hereinafter excepted, shall be competent and compellable to give evidence, &e., on behalf of either or any of the parties to the said action or other proceeding.” Bjr the existing law, not only persons interested, but parties in the cause, who might have no pecuniary interest, such as executors and administrators and others, were excluded from testifying. The manifest object of the Act was to remove these causes of disqualification. But it was not intended thereby to restore the competency of a party otherwise disqualified. A felon convict, or a person who *338 bad been convicted of an infamous offence, and was after-wards a party in a civil cause, either as plaintiff or defendant, was not restored to his competency by virtue of the Act of 1866. In other words, the Act was not intended, in such case, to have the effect of an executive pardon.
By the third clause it is provided that “ no person shall be required to answer any question tending to criminate himself; nor shall husband or wife be required to disclose any communication made to each other during coverture.” It was an axiom of the law that no one should be required to give testimony that would criminate himself. By the former of these exceptions the Legislature declare that this protection should be preserved. So, upon well settled principles of public policy, as well as because of the identity of their legal rights and interests, confidential communications between husband and wife belong to the class of privileged communications, and are protected. The exception in the third clause was manifestly intended to preserve this rule of law, although the husband or wife might be a party in the cause, and might be required to testify under the general and comprehensive terms of the statute. But no more was intended than to preserve the rules of law. The declarations of husband and wife arc subject to the same rules of exclusion which govern their testimony as witnesses. (1 Greenl. Ev. § 341.) But there are exceptions to the rule, both in relation to their testimony and their declarations. Thus, on an indictment against the husband for assault and battery upon her, the wife is a competent witness; and so, says Professor Greenleaf, “the wife has, on the same ground of necessity, been sometimes admitted as a witness-to testify to secret facts, which no one but herself could know. Thus, upon an appeal against an order of filiation, in the case of a married woman, she was held to be a competent witness to prove her criminal connection with the defendant, though her husband was interested in the event, *339 but for reasons of public decency and morality, she cannot be allowed to say, after marriage, that she had no connection witb her husband, and that, therefore, her offspring is spurious.” (Id. § 344.) In Aveson vs. Lord Kinnaird, (6 East, 188,) the declarations of the wife -were held to be admissible for or against the husband, wherever they constitute part of the res geslse which are material to be proved; as where he obtained insurance on her life as a person in health, she being in fact diseased ; or in an action by him against another for beating her, (Skin. 402, Thompson vs. Freeman;) or in an. action against him for her board, he having turned her out of doors; (Walton vs. Green, 1 C. & P. 621.) So, where she acted as his agent. (Thomas vs. Hargrave, Wright vs. Hargrave, Wright, 595.)
The presiding Judge reports that ‘‘Rachel E. Moseley, the widow of the testator, was sworn, and I excluded so much of her evidence as consisted of communications between her and her late husband, the testator, supposing that the Act of Assembly which made her a competent witness, expressly excluded such communications.” The proviso of the Act was intended, as has been remarked, to preserve the principles of the common law upon the subject. If the communications were of a confidential character, and if, being such, they were not within the exceptions recognized by the rules of evidence, they were properly excluded, not otherwise. And the Judge supposed himself constrained by the terms of the Act to exclude all communications between the witness and her late husband, the Court is unable to determine whether the communications proposed to be given in evidence were or were not such as, by the rules of law, should have been received. If so, they were not excluded by the Statute of 1866.
Then as to the third ground. It was proposed to prove by the witness that her deceased husband was the father *340 of her child. The testimony was excluded upon the ground that, the marriage of the parties having been established, the paternity of the child was to be legally inferred, and that "this and other evidence seemed to him (the Judge) to supersede the evidence of the wife, (even if admissible under the late Act of the General Assembly,) for decency’s sake.” The allegation was that the feeble and suspicious mind of the husband had been poisoned by the false insinuations of parties interested as to his wife’s infidelity, and that their machinations had been but too successful. To prove the falsity of these insinuations might require other evidence than the .admitted solemnization of the bans of matrimony. . Her evidence was to show that the fact was in accordance with the legal inference, and that her husband’s suspicions were unfounded. Upon the authority already cited the testimony was admissible, although she would be incompetent upon grounds of public policy and decency, to prove that the marriage had never been consummated, and therefore that her offspring was spurious. Nor was it superseded because "the paternity of her child might be inferred from other evidence.”
The eighth ground of appeal alleges error in the charge of his Honor, “ that if the jury should find against the will, they must specify the ground on which tbeir verdict was founded.” The report states that all the issues were submitted to the jury, and they were instructed to indicate the issue on which they found if their verdict should be against the will.
The Court is not aware of any such legal obligation on the part of the jury, nor is it believed to be in accordance with the practice of the Court. The inquiry was as to the validity of the instrument propounded as the last will and testament of Hugh Moseley, deceased. It was assailed on various grounds. Upon the validity or invalidity of the will the jury were required to be unanimous, but not *341 necessarily, upon tbe reasons wbicb led to that conclusion. The Judge was probably misled by a supposed analogy to the practice on an issue of fraud under the Insolvent Debtors’ Law. In such case the suggestion must contain the charges and specifications; and thewerdict must answer ivith reference to each charge and specification that it is true or untrue. But this is required, (as explained by the Court in Haviland vs. Wolff, 14 Rich. 108,) “ by the diversity of effect Avhich, under the Act of 1788, (5 Stat. 79,) different charges have, when established against the applicant for relief from imprisonment.” But no such reason exists in this case! The effect of the grounds assumed in the suggestion is to invite the attention of the Court (Judge and jury) to the specific objections urged by the party, and Avhich, as they contend, should influence the general determination for or against the will. It has been often said in our books that, although a majority of the Court must concur in the judgment announced, the several members of that majority may not agree in the ratiocination of the Judge who is the organ of the Court. It is enough to require of the jury unanimity in the result, and this is obtained by a general verdict for or against the will.
The motion for a new trial is granted.
Wardlaw and INGLis, A. JJ., concurred.

Motion granted.